**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARTAEYA HILL, | ) Civil Action No. |
| | ) |
| *Plaintiff*, | ) Filed Electronically |
| | ) |
| vs. | ) |
| | ) |
| CHESTNUT RESTAURANTS LLC d/b/a | ) |
| TACO BELL, and | ) |
| SUMMERWOOD CORPORATION d/b/a | ) |
| TACO BELL | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**COMPLAINT IN CIVIL ACTION**

Plaintiff, Martaeya Hill, by and through the undersigned counsel, files the following

Complaint in Civil Action against Defendants, Chestnut Restaurants LLC d/b/a Taco Bell and

Summerwood Corporation d/b/a Taco Bell, averring as follows:

**THE PARTIES**

1. Plaintiff, Martaeya Hill ("Plaintiff"), is an adult individual who resides in Forest

Hills, Pennsylvania.

2. Defendant, Chestnut Restaurants LLC d/b/a Taco Bell ("Defendant"), is a

Pennsylvania business entity with a registered address of 14 Balligomingo Road, Conshohocken,

PA 19428. Defendant's principal address is 200 Barr Harbor Road, Suite 100, Conshohocken, PA

19428.  The place of business is located at the as follows, where Plaintiff reported to work on a

regular basis at Defendant's facility located on 2300 Ardmore Boulevard, Forest Hills,

Pennsylvania, 15221 (the "Facility").

3. Defendant, Summerwood Corporation d/b/a Taco Bell ("Defendant"), is a

Pennsylvania business entity with a registered address of 200 Barr Harbor Drive FL 1,

Conshohocken, PA 19428-2977.  Defendant's principal address is same.  The place of business is located at the as follows, where Plaintiff reported to work on a regular basis at Defendant's facility located on 2300 Ardmore Boulevard, Forest Hills, Pennsylvania, 15221 (the "Facility").

**JURISDICTION AND VENUE**

**A.     This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction") as Plaintiff is advancing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (the "Title VII").

**B.     The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

5.     Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (hereinafter, the "Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

6.     Specifically, these events and omissions occurred within Allegheny County, Pennsylvania, which is one of the counties encompassed by the Western District.

7.     This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny County, Pennsylvania, and conduct arising within Allegheny County is docketed within the Pittsburgh Division of the Western District pursuant to LCvR 3.

**C.     This Court May Exercise Personal Jurisdiction Over Defendant.**

8.     This Court may exercise personal jurisdiction over Defendant pursuant to 42 Pa. C.S. § 5301(a)(2), and this Court's exercise of jurisdiction comports with the Due Process Clause

of the United States Constitution.

9. Personal jurisdiction is proper over a defendant if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301. *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)).

10. 42 Pa. C.S. § 5301 states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." 42 Pa. C.S. § 5301(a). This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations.—
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.  42 Pa. C.S. § 5301(a).

11. As discussed above, Defendant is a Pennsylvania business entity registered in the Commonwealth of Pennsylvania and thereby subjected itself to the general jurisdiction of Pennsylvania's tribunals; further, Defendant maintains the Facility in Pennsylvania and conducts business operations within Pennsylvania. Accordingly, Defendant may properly be personally brought before this Court pursuant to 42 Pa. C.S. § 5301(a)(2).

**D.    Plaintiff Has Exhausted Her Administrative Remedies; Her Federal and State Law Claims are Properly Before This Court.**

12. Plaintiff has satisfied all procedural and administrative prerequisites under 42 U.S.C. § 2000e-5 and may now proceed to bring this action before the Court. Specifically:

a. On or about February 6, 2026, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") seeking redress for Claims at charge number 533-2026-01167 (the "EEOC Charge").

b. On February 10, 2026, the EEOC issued the Notice of Right to Sue ("RTS Notice"), affording Plaintiff 90 days within which to timely file the Federal Law Claims and the State Law Claims.

c. The instant complaint is filed within the 90-day time period.

## FACTUAL BACKGROUND

13. Plaintiff is a black female lesbian.

14. Plaintiff commenced her employment with Defendant on or about November 1, 2024, in the position of Closing Coach (formally designated Shift Lead in Defendant's HR system).

15. Plaintiff's regular job duties included, but were not limited to, checking in and ordering food and supply inventory, managing the staff deployment chart, overseeing store operations including labor and sales targets, and performing end-of-day closures.

16. Plaintiff was compensated at an hourly rate of $17.25 and worked full-time.

17. From the outset of her employment, Plaintiff's supervisors and coworkers initially assumed, and treated Plaintiff as a male.

18. Upon Plaintiff's correction of the same, that she was a black female, the demeanor of Defendant's general manager in particular, Blessing Babu ("Babu"), toward Plaintiff changed dramatically — his communications became dismissive and hostile.

19. In or around June to July 2025, Plaintiff was promoted to an expanded role and received a corresponding pay increase.

4

**Sexual Orientation and Gender Identity Discrimination**

20.    On or about May 2025, Plaintiff disclosed to Babu that she was in a romantic relationship with a female coworker employed at the Facility.

21.    Following this disclosure, Babu's harassment of Plaintiff escalated significantly.

22.    From approximately June 2025 through September 2025, Babu made repeated derogatory and sexually explicit comments targeting Plaintiff's sexual orientation and gender identity, including but not limited to:

a.    Vulgar, explicit remarks about Plaintiff's ability to "impregnate" her girlfriend;

b.    Derogatory comments to the effect that Plaintiff was "not picking and choosing when I wanna be a man or woman," despite Plaintiff never identifying as anything other than female; and

c.    A statement that Babu should take Plaintiff's girlfriend "out back to the dumpster."

23.    Plaintiff, despite these comments, was an exemplary employee and to this point had received no disciplinary history and performed her work without complaint.

24.    Plaintiff continued to conduct herself in a professional manner fulfilling her job duties and yet was subjected to this pattern of targeted hostility solely on account of her sex, sexual orientation, and gender expression.

**The August 30, 2025 Incident**

25.    On or about August 30, 2025, at approximately 11:30 p.m., Babu arrived at the Facility while Plaintiff was working a closing shift.

26.    In the presence of a third-party witness at the drive-through window area, Babu deliberately referred to Plaintiff using the dehumanizing pronoun "it."

27.    When Plaintiff asked to whom the pronoun referred, Babu repeatedly and

intentionally used "it" to refer to Plaintiff.

28.    Later during the same shift, while Plaintiff was working on the food line, Babu threw a packet at Plaintiff, causing it to land in a food container.

29.    When Plaintiff warned Babu that his conduct could constitute an HR violation, Babu responded: "*Go to HR, bitch.*"

30.    Plaintiff exited the building as a result of Babu's conduct. Babu attempted to prevent Plaintiff from leaving by threatening that she would be terminated if she did so.

31.    Following the incident, Babu verbally apologized to Plaintiff.

32.    Babu also sent Plaintiff text messages asking why she was treating him "like an enemy" and attempting to dissuade Plaintiff from reporting his conduct to HR.

33.    Plaintiff reported Babu's conduct to Defendant's HR department and to District Manager Casey Dubernick ("Dubernick") promptly following the August 30, 2025 incident.

34.    Plaintiff additionally sought the contact information for Dubernick's supervisor, Brett Singleton, to escalate her complaint.

35.    In response to Plaintiff's complaint, Babu's sole proposed remedy was to transfer Plaintiff to a different Taco Bell location.

36.    Plaintiff communicated to management that this transfer was not feasible due to her transportation and housing circumstances.

37.    Plaintiff also requested either a shift change or that another employee be present during closings for her safety.

38.    Defendant denied both requests.

39.    Defendant failed to take any meaningful corrective action against Babu in response to Plaintiff's complaint.

6

**The September 12, 2025 Incident and Constructive Discharge**

40.     On September 12, 2025, crew member Jemeira Edwards ("Edwards") — who maintained a personal relationship with Babu — made derogatory statements to Plaintiff.

41.     Edwards also threatened to have Plaintiff shot.

42.     Plaintiff reported Edwards's conduct and threats to management.

43.     Defendant took no corrective action.

44.     Plaintiff reasonably believed and avers herein that Edwards's conduct was facilitated and emboldened by her personal relationship with Babu and was in retaliation for Plaintiff's HR complaint against Babu.

45.     As a direct result of Defendant's failure to take any remedial action against Babu or Edwards, and in the face of an ongoing, severe, and hostile work environment, Plaintiff was compelled to resign her employment with Defendant on September 12, 2025.

46.     Plaintiff's resignation constituted a constructive discharge, as the conditions of her employment were rendered objectively intolerable due to Defendant's unchecked discriminatory and hostile conduct.

**COUNT I**
**DISCRIMINATION IN VIOLATION OF TITLE VII**
**42 U.S.C. § 2000e, *et seq.***

47.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

48.     Title VII prohibits an employer from discriminating against an individual with respect to the terms, conditions, or privileges of employment because of the individual's sex. 42 U.S.C. § 2000e-2(a)(1).

49.     The Supreme Court of the United States has held that Title VII's prohibition on sex

discrimination extends to discrimination based on sexual orientation and gender identity. *Bostock v. Clayton County*, 590 U.S. 644 (2020).

50.    Plaintiff is a member of a protected class by virtue of her sex (female), sexual orientation (lesbian), and gender expression (masculine-presenting female).

51.    To establish a *prima facie* case of discrimination under Title VII, a plaintiff must demonstrate: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the circumstances permit an inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

**A.    Plaintiff is a Member of a Protected Class.**

52.    As averred hereinabove, Plaintiff is a black female who identifies as a lesbian, and thereby a member of a protected class under Title VII.

**B.    Plaintiff was Qualified for Her Position.**

53.    Plaintiff was qualified to perform the essential functions of her position as Closing Coach/Shift Lead as she  performed her duties without disciplinary action or reprimand throughout her tenure with Defendant.

54.    Among other things Plaintiff earned a promotion during her employment and successfully passed her official shift lead certification exam just prior to her constructive discharge, both of which are direct indicia of Plaintiff having the requisite skill, education, background and training to be qualified for her position.

**C.    Plaintiff Suffered an Adverse Employment Action.**

55.    Defendant, through Babu, subjected Plaintiff to a pattern of discriminatory treatment — including derogatory comments, dehumanizing language, and physical intimidation — on account of her sex, sexual orientation, and gender expression.

56.     Defendant further denied Plaintiff's reasonable requests for shift changes and additional safety measures following Babu's conduct.

57.     Defendant failed to take any corrective action against Babu or Edwards despite receiving Plaintiff's complaints.

58.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff was constructively discharged from her employment on September 12, 2025.

**D.     Plaintiff is Entitled to Punitive Damages.**

59.     A plaintiff may recover punitive damages when the defendant "engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).

60.     At all times relevant herein, Defendant acted with the knowledge that it was lawfully required to provide a workplace free of sex-based discrimination to individuals like Plaintiff who were statutorily protected by Title VII.

61.     As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

        WHEREFORE, Plaintiff, Martaeya Hill, seeks a judgment against Defendants, Chestnut Restaurants LLC d/b/a Taco Bell and Summerwood Corporation d/b/a Taco Bell, for willful noncompliance of Title VII and seeks: (i) compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life; (ii) punitive damages in an amount to be determined

9

at trial and in an amount sufficient to deter Defendant from engaging in future conduct of a similar nature; (iii) equitable relief in the forms of back pay and front pay; (iv) the costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff; (v) pre-judgment and continuing interest as calculated; and (vi) any further legal and equitable relief as this Court may deem just and proper.

**COUNT II**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF TITLE VII**
**42 U.S.C. § 2000e,** *et seq.*

62.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

63.     To establish a hostile work environment claim under Title VII, an employee must show that "(1) the employee suffered intentional discrimination because of [her protected class], (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the Plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability." *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

**A.      Plaintiff Suffered Intentional Discrimination Because of Her Sex, Sexual Orientation, and Gender Expression.**

64.     Throughout the course of her employment, Plaintiff was targeted with intentional discrimination by Babu on account of her sex, sexual orientation, and gender expression.

65.     Specifically, Babu subjected Plaintiff to dehumanizing pronouns, vulgar and sexually explicit comments, and derogatory remarks about Plaintiff's sexual orientation and gender identity on a repeated and ongoing basis.

66.     Babu's conduct was reasonably calculated to exploit and target Plaintiff's protected

10

characteristics and to create an intolerable work environment for Plaintiff.

**B.    The Discrimination Plaintiff Endured was Severe and Pervasive.**

67.    The discrimination Plaintiff experienced was both "severe" and "pervasive." The 'severe or pervasive' standard requires conduct that is sufficient "to alter the conditions of [the employee's] employment and create an abusive working environment." *Hawkins v. City of Philadelphia*, 571 F. Supp. 3d 455, 463 (E.D. Pa. 2021) (citing *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 214-15 (3d Cir. 2017)).

68.    Babu's derogatory and sexually explicit comments about Plaintiff's sexual orientation and gender expression persisted across a period of multiple months, occurring repeatedly throughout Plaintiff's working shifts.

69.    The August 30, 2025 incident — during which Babu publicly referred to Plaintiff as "it," physically threw an object at Plaintiff, verbally threatened her employment, and directed profanity at her — was severe in nature and constituted physical intimidation.

70.    Further, Defendant's crew member Edwards threatened Plaintiff with physical violence on September 12, 2025, in retaliation for Plaintiff's protected complaints.

71.    Considered in their totality, Babu's and Edwards's conduct was sufficiently severe and pervasive to satisfy the second element of Plaintiff's *prima facie* burden.

**C.    The Discrimination Detrimentally Affected Plaintiff.**

72.    Babu's discriminatory and hostile conduct was the direct and proximate cause of substantial emotional and psychological harm to Plaintiff.

73.    The derogatory remarks targeting Plaintiff's sexual orientation and gender identity caused Plaintiff significant distress, including emotional breakdowns and a profound fear for her personal safety while at work.

11

74. Defendant's failure to provide any effective remedy — including its refusal to change Plaintiff's schedule, provide additional safety measures, or take corrective action against Babu or Edwards — compounded this harm.

75. As a direct and proximate result of Defendant's failure to act, Plaintiff was constructively discharged and has suffered lost wages from the date of her termination.

**D. The Discrimination Plaintiff Suffered Would Detrimentally Affect a Reasonable Person in Like Circumstances.**

76. A reasonable person in Plaintiff's position — a black female who is a lesbian and who presents in a masculine manner — would find Babu's repeated comments, dehumanizing language, physical intimidation, and threats to be hostile and abusive.

77. Further, a reasonable person would find Edwards's violent threats, facilitated by management and left unaddressed by Defendant, to create an objectively intolerable work environment.

78. Plaintiff made repeated efforts throughout her employment to deter the unwelcome and hostile behavior, including reporting Babu's conduct to HR and to Dubernick. Defendant permitted the hostile conduct to continue unchecked.

**E. *Respondeat Superior* Liability Exists Due to Defendant's Failure to Correct the Hostile Work Environment.**

79. *Respondeat superior* liability exists in connection with a claim for a hostile work environment if: (1) the tort is committed within the scope of employment; (2) the employer was negligent or reckless in failing to train, discipline, fire, or take remedial action upon notice of harassment; or (3) the offender relied upon apparent authority or was aided in commission of the tort by the agency relationship. *Murphy v. Hotwire Commc'ns, LLC*, No. 19-5901, 2020 BL 168067, at *5 (E.D. Pa. May 5, 2020) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 26 (3d

12

Cir. 1997)).

## I.    Babu's Conduct Occurred Within the Scope of His Employment.

80.    At all times relevant herein, Babu's hostile conduct was perpetuated at the Facility and during Plaintiff and Babu's scheduled working hours.

81.    More specifically, Babu's hostile conduct occurred while exercising his supervisory responsibilities over Plaintiff as the Facility's general manager.

82.    As such, the tortious conduct occurred within the scope of Babu's employment.

## II.    Defendant was Negligent and Reckless in its Failure to Discipline, Fire, or Take Remedial Action Upon Notice of Babu's and Edwards's Harassment of Plaintiff.

83.    Defendant was aware of Babu's hostile conduct, as Plaintiff reported it to Defendant through HR and through Dubernick, both of whom held organizational authority to remedy the hostile environment.

84.    Despite Plaintiff's reports, Defendant took no meaningful disciplinary or remedial action against Babu. The only proposed remedy — a transfer to a distant location that was not feasible for Plaintiff — was inadequate and effectively penalized Plaintiff rather than the harasser.

85.    Defendant was similarly aware of Edwards's threats and derogatory statements and took no corrective action.

## III.    Babu was Aided by Defendant in Effectuating a Hostile Work Environment.

86.    As averred hereinabove, Defendant had actual knowledge of Babu's hostile behavior toward Plaintiff and the detrimental effects such conduct had on Plaintiff's employment.

87.    Rather than correct Babu's hostile behavior, Defendant permitted Babu to continue his conduct unchecked, denied Plaintiff's reasonable requests for safety accommodations, and offered only an infeasible transfer that would have penalized Plaintiff for Babu's own misconduct.

13

88.    Accordingly, *respondeat superior* liability attaches to Defendant as it failed in its duty to properly discipline its employees in furtherance of providing a work environment free of hostility.

89.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Martaeya Hill, seeks a judgment against Defendants, Chestnut Restaurants LLC d/b/a Taco Bell and Summerwood Corporation d/b/a Taco Bell, for willful noncompliance of Title VII and seeks: (i) compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life; (ii) punitive damages in an amount to be determined at trial and in an amount sufficient to deter Defendant from engaging in future conduct of a similar nature; (iii) equitable relief in the forms of back pay and front pay; (iv) the costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff; (v) pre-judgment and continuing interest as calculated; and (vi) any further legal and equitable relief as this Court may deem just and proper.

**COUNT III**
**RETALIATION IN VIOLATION OF TITLE VII**
**42 U.S.C. § 2000e-3(a)**

90.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

91.    Title VII makes it unlawful for an employer to discriminate against an employee

14

because the employee "has opposed any practice made an unlawful employment practice" under Title VII, or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a).

92. To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006).

**A.    Plaintiff Engaged in a Protected Activity.**

93. On or about August 30, 2025, Plaintiff filed a complaint with Defendant's HR department and reported Babu's conduct to District Manager Dubernick, opposing Babu's discriminatory and harassing conduct toward Plaintiff based on her sex, sexual orientation, and gender expression.

94. This report constituted protected activity within the meaning of Title VII.

**B.    Plaintiff Suffered an Adverse Employment Action.**

95. On September 12, 2025 — less than two weeks after Plaintiff's protected complaint — Edwards, who maintained a personal relationship with Babu, made violent threats and derogatory statements directed at Plaintiff based on her gender identity and sexual orientation.

96. Defendant took no corrective action in response to Edwards's conduct.

97. Plaintiff was thereby constructively discharged from her employment on September 12, 2025.

**C.    A Causal Connection Exists Between Plaintiff's Protected Activity and the Adverse Employment Action.**

98. The close temporal proximity between Plaintiff's HR complaint on August 30, 2025 and the retaliatory conduct by Edwards on September 12, 2025 — approximately two weeks

later — establishes a strong causal connection between the protected activity and the adverse action.

99.     The causal connection is further supported by the fact that Edwards had a personal relationship with Babu — the subject of Plaintiff's complaint — and that Defendant, despite having been placed on notice of the hostile environment, took no corrective action either before or after Edwards's retaliatory conduct.

100.    As a direct and proximate result of Defendant's retaliatory conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Martaeya Hill, seeks a judgment against Defendants, Chestnut Restaurants LLC d/b/a Taco Bell and Summerwood Corporation d/b/a Taco Bell for willful noncompliance of Title VII and seeks: (i) compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life; (ii) punitive damages in an amount to be determined at trial and in an amount sufficient to deter Defendant from engaging in future conduct of a similar nature; (iii) equitable relief in the forms of back pay and front pay; (iv) the costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff; (v) pre-judgment and continuing interest as calculated; and (vi) any further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

101.    Plaintiff requests a trial by jury on all matters so triable.

16

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date:  May 11, 2026

By:  */s/ Andrew M. Snyder*
Andrew M. Snyder, Esq. (Pa. I.D. No. 320004)
*/s/ Brendan K. Petrick*
Brendan K. Petrick, Esq. (Pa. I.D. No. 88968)
*/s/ Patrick W. Carothers*
Patrick W. Carothers, Esq. (Pa. I.D. No. 85721)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.9592
Facsimile: 412.910.7510
andrew@workersrightslawgroup.com
brendan@workersrightslawgroup.com
patrick@workersrightslawgroup.com

*Counsel for Plaintiff, Martaeya Hill*